IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID C. GEVAS, #B-41175, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11–cv–352–MJR–SCW |
| | ) |
| LISA WALTERS, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff has exhausted his administrative remedies as to the claims against Lisa Walters. It is **RECOMMENDED** that the Court **FIND** that Plaintiff did not exhaust his administrative remedies, that the Court **GRANT** Defendant Walters' Motion for Summary Judgment (Doc. 20), and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Findings of Fact

Plaintiff claims presented in this case were initially severed from his original Complaint filed pursuant to 42 U.S.C. § 1983 in *Gevas v. Ryker*, **Case No. 10-cv-493-MJR-SCW** (*See also* Docs. 1 & 2). Plaintiff's claims, which were presented as Count 2 in that case, were severed and removed as the sole issue presented in this case. In this case, Plaintiff alleges that he was retaliated against by Defendant Walters and Defendant Cox for filing grievances (Doc. 3). Specifically, Plaintiff alleges that

Defendant Walters retaliated against him by placing him in a cell with another inmate, Inmate Williams, where Plaintiff was subjected to a foul smell due to Inmate Williams' unsanitary conditions (*Id.* at p. 8). As to Defendant Cox, Plaintiff alleges that Cox placed him in segregation and filed a false and unjustified disciplinary report against Plaintiff in retaliation for Plaintiff filing grievances and going on a hunger strike (*Id.*).

Subsequently, Defendant Walters filed a Motion for Summary Judgment (Docs. 20 & 21) alleging that Plaintiff failed to exhaust his administrative remedies as to his claims of retaliation against Defendant Walters. Specifically, Walters alleges that Plaintiff's grievances failed to allege any allegations against Defendant Walters. In support of her motion, Defendant Walters offers the testimony of Sarah Johnson, Chairperson with the Administrative Review Board (ARB) (Doc. 21 at ¶ 7; Doc. 21 Ex. A). Johnson reviewed the ARB records for grievances filed by Plaintiff related to his cell assignment and the disciplinary ticket issued on December 15, 2008 (Ex. A at ¶ 6). Her search returned two grievances received by the ARB on March 30, 2009 (*Id.* at ¶¶ 6-7). The first grievance was dated December 15, 2008 and had a March 13, 2009 Grievance Officer's Report with it (*Id.*). The second grievance was dated December 17, 2008 and had a Grievance Officer's Report which was dated March 17, 2009 (*Id.*).

The December 15, 2008 grievance dealt with Plaintiff being housed with Inmate Williams, who Plaintiff alleged had bad hygiene (Doc. 21 Ex. A at p.00007). Plaintiff's grievance alleged that he had tried to discuss the matter of Williams' hygiene with him but that he became hostile (*Id.*). Plaintiff then alleged that he spoke with C/O Reeves on December 10, 2008 about being reassigned to another cell and C/O Reeves apparently said he understood and would speak to the Lieutenant. The following day, Lieutenant Jennings approached Plaintiff's cell and allegedly informed Plaintiff that he would have to remain in the cell for another two weeks before being reassigned (*Id.* at 00008). On that

same day, Plaintiff declared a hunger strike and Lt. Jennings allegedly threatened him with a disciplinary report if he continued his hunger strike. Plaintiff's hunger strike ended on December 12, 2008 and a Lt. McCorkle allegedly informed Plaintiff that both he and the Warden were aware of Inmate Williams conditions and Plaintiff was, therefore, placed in a different cell, but on December 15, 2008, Defendant Cox informed Plaintiff that he was moving back to the cell with Inmate Williams. In response, Plaintiff declared a hunger strike and Lt. Cox informed him that he could not do so and told him to cuff up and issued a disciplinary report against Plaintiff (*Id.*). The Counselor's Response to Plaintiff's December 15, 2008 grievance informed Plaintiff that the Placement Officer was in charge of placing inmates in cells and that Plaintiff could not choose his cell assignment (*Id.* at p. 00007). The Grievance Officer's Response indicated that Plaintiff had been moved from his cell with Inmate Williams because of his hunger strike and after the hunger strike ended, although he was initially moved to a different cell, he was returned to his original cell (*Id.* at p. 00006). Shift Commander Lt. Goings indicated that this was normal policy to return an inmate to his original cell after a hunger strike in order to deter inmates from using a hunger strike as a way of manipulating cell assignments. The Grievance Officer denied Plaintiff's grievance, indicating that proper procedure was followed in light of Plaintiff's declared hunger strike (*Id.*).

      The December 17, 2008 grievance from Plaintiff dealt with the disciplinary report that he received from Lt. Cox on December 15, 2008. The grievance alleged that the disciplinary report was false and retaliatory (*Id.* at p. 00003). Plaintiff also indicated in the grievance that the hearing conducted by a Lt. Goings was improper as Goings refused to interview two witnesses and he was allegedly biased (*Id.*). The Counselor's Response indicated that the grievance had been sent directly to the Grievance Officer whose own Report stated the witnesses proposed by Plaintiff were two security officers, Lt. McCorkle and C/O Reeves. Lt. McCorkle was allegedly not called because it would undermine

authority and security of the officers as he dealt with Plaintiff on his previous housing refusal and had nothing to do with the incident involving Cox. C/O Reeves was not contacted because his testimony would have been cumulative (*Id.*). The grievance was ultimately denied.

The ARB received both grievances on March 30, 2009. A letter was sent from the ARB to Plaintiff on May 4, 2009 regarding his December 17, 2008 grievance (*Id.* at p. 00001). The ARB ultimately denied the grievance, findings that they believed Plaintiff had committed the offense for which he was disciplined and that the disciplinary report could not be determined to be retaliatory. As to the December 15, 2008 grievance, the ARB sent Plaintiff a letter dated June 2, 2009, also denying his grievance (*Id.* at p. 00005). The ARB found that Plaintiff's issue with housing had been appropriately addressed by the institution as cell assignment was an administrative decision and hunger strike procedures were properly followed.

Defendant Walters argues in her motion for summary judgment that Plaintiff has failed to exhaust his administrative remedies as to the claims against her. Defendant points out that neither of the grievances submitted to the ARB names or refers to Defendant Walters although Plaintiff does mention Defendant Cox and several individuals that are not a party to this suit. While Plaintiff properly filed his grievances regarding his cell placement up the chain of command at the institutional level and then to the ARB for final disposition, Defendant argues that Plaintiff was required under the Illinois Administrative Code to either name Defendant Walters or to at least give as much description as possible in order to properly exhaust as to Defendant. Plaintiff's grievances, according to Defendant, neither names nor describes Defendant Walters.

Plaintiff has filed a Response (Doc. 30) in which he argues that Defendant Walters has failed to meet her burden and that he did, indeed, exhaust his administrative remedies. Specifically, Plaintiff argues that because his claims passed initial merit review, Judge Reagan "obviously" found that

Plaintiff had also exhausted his administrative remedies. Further, Plaintiff alleges that he attached three other grievances to his December 17, 2008 grievance which he sent to the ARB, which Defendant has not listed. Plaintiff also argues that his December 15, 2008 grievance identified Defendant Walters as the Counselor's Response indicated that the placement office was in charge of making cell assignments and Defendant Walters was the placement officer. At the time of initially writing the grievance, Plaintiff alleges that he did not know Defendant Walters' name nor that she was the placement officer.

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issue presented in Defendant Walter's motion is solely a legal question.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**.

Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only

a legal question." ***Doss v. Gilkey***, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).

A.      Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Hall was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the

Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 U.S.C. §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 U.S.C. §504.850(g)**.

**B.** Analysis

Defendant Walters argues that Plaintiff has failed to exhaust his administrative remedies as to the claims against her because he failed to name or describe Defendant Walters in any of the grievances he exhausted. The Illinois Administrative Code requires that inmates file grievances with as much factual information as possible regarding their complaints, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." **20 Ill Admin. Code 504.810 (b)**. While the grievance procedures set out in the Illinois Administrative Code do not require inmates housed in the Illinois Department of Corrections to

identify by name the individuals they are grieving against when the name of the individual is unknown, the inmates are required to "include as much descriptive information about the individual as possible." *Id*. Here, Plaintiff has failed to make any allegations against Defendant Walters in his grievance. He neither names Defendant Walters, nor does he describe her any detail. Plaintiff's grievance merely states that he was assigned to a cell with Inmate Williams for retaliatory reasons but he does not mention who was responsible for placing him in that cell or why that person made that assignment. Plaintiff fails to even mention the Placement Officer or the Placement Office as the source of the cell assignment. Plaintiff does list several individuals who he claims were involved in placing him in the cell with Inmate Williams, including Lt. Cox, Lt. Jennings, and Lt. McCorkle. However, his grievance does not make any allegations towards Defendant Walters or anyone that could remotely even be construed as Defendant Walters. While Plaintiff insists that the placement officer was named in one of his grievances, in that grievance the counselor's response merely stated that the placement office is responsible for making cell assignments. However, Plaintiff failed to raise any allegations in his grievance against the placement office. Nothing in the grievances suggests that Plaintiff was complaining about Defendant Walters or that the prison was on notice that there were issues with Defendant Walters. Without being on notice, prison officials were not in a position to investigate or address any issues with Walters or the placement office. *See Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005) (purpose of exhaustion requirement is to alert prison officials to problems and allow them an opportunity to address the issues without the cost of litigation).** Thus, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has not sufficiently identify Defendant Walters in his grievances and thus has failed to exhaust his administrative remedies as to Defendant Walters

### IV. Conclusion

Accordingly, the Undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff

has failed to exhaust his administrative remedies as to Defendant Walters, **GRANT** Defendant Walters' motion for summary judgment (Doc. 20 & 21), and **DISMISS without prejudice** the claims against Defendant Walters for failure to exhaust. If the Court adopts this Report and Recommendation, then the only claims that will remain pending before this Court are the claims of retaliation against Defendant Cox.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: November 29, 2011

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge